1
2
3
4
5
6
7

8               UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  AARON POWELL, | No.  2:16-cv-02781-DAD-JLT |
| 12          Plaintiff, | |
| 13     v. | ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND MOTION FOR COSTS AND EXPENSES, IN PART |
| 14  FCA US LLC, | |
| 15          Defendant. | (Doc. No. 110, 111) |
| 16 | |

17          This matter is before the court on the motion for attorneys' fees and motion for costs and

18   expenses filed by plaintiff on May 26, 2020.  (Doc. Nos. 110, 111.)  Pursuant to General Order

19   No. 617 addressing the public health emergency posed by the coronavirus pandemic, on May 27,

20   2020, the court took this matter under submission to be decided on the papers.  (Doc. No. 112.)

21   For the reasons explained below, the court will grant plaintiff's motions, in part.

22                          **BACKGROUND**

23          On October 21, 2016, plaintiff commenced this action against defendant FCA US LLC

24   ("FCA") by filing suit in the San Joaquin County Superior Court.  (Doc. No. 1-1 at 3.)  In his

25   complaint, plaintiff alleged that a new 2011 Dodge Durango that he purchased on August 4, 2011

26   was delivered to him with serious defects and nonconformities to warranty.  (Doc. No. 1-1 at 5,

27   25.)  Plaintiff asserted claims for breaches of express and implied warranties in violation of the

28   Song-Beverly Act, California Civil Code § 1790 *et seq*., and a claim for fraudulent inducement by

1  concealment.  (*Id.* at 25–30.)  On November 23, 2016, defendant removed this action to this

2  federal court.  (Doc. No. 1.)  Thereafter, the court set a trial date of January 15, 2019.  (Doc. No.

3  11.)  Following a stipulation to continue the trial date and a subsequent continuance due to the

4  court's unavailability, the trial date was ultimately continued to March 31, 2020.  (Doc. No. 94.)

5      On December 2, 2019, counsel for plaintiff filed a statement notifying the court of

6  plaintiff Larry Powell's death.  (Doc. No. 97.)  Thereafter, counsel filed a motion to substitute

7  Aaron Powell, special administrator for decedent plaintiff Larry Powell, as named plaintiff in this

8  action, which the court granted on January 6, 2020.  (Doc. Nos. 99, 103.)

9      During this time and in light of this development, FCA had agreed to keep open an offer

10  of judgment under Federal Rule of Civil Procedure 68 that it had served on July 19, 2019 to settle

11  this action for $110,000.00.  (Doc. No. 110-1 at 13.)  On February 4, 2020, plaintiff served FCA

12  with a settlement offer in the amount of $110,000.00, updated to reflect Aaron Powell as the

13  named plaintiff.  (*Id.* at 14.)  FCA accepted this settlement offer.  (*Id.*)  The settlement amount

14  was "inclusive of a full statutory 'buyback' of plaintiff's defective vehicle, incidental and

15  consequential damages, and civil penalties."  (*Id.*; Doc. No. 110-2 at 34.)  The settlement also

16  provided that FCA "shall pay attorneys fees, costs, and expenses reasonably incurred in the

17  commencement and prosecution of this action, . . . , pursuant to Civil Code section 1794

18  subdivision (d) as agreed to by the parties, or upon properly noticed motion to the Court if the

19  parties cannot agree."  (Doc. No. 110-2 at 34.)

20      On February 5, 2020, the parties notified the court that they had reached a settlement of

21  this action.  (Doc. No. 104.)  Apparently unable to agree on the appropriate amount of attorneys'

22  fees, costs, and expenses to be paid to his counsel,[1] however, on May 26, 2020, plaintiff filed the

23

24  ────────────────────
   [1]  The parties dispute whether plaintiff's counsel made any attempt to resolve the amount of

25  attorneys' fees, costs, and expenses informally, without involving the court by filing the pending
   motions.  (*See* Doc. Nos. 114 at 2, n.1; 116 at 8.)  FCA's counsel, attorney Scott Shepardson, has

26  submitted a declaration in which he asserts that plaintiff's counsel did not contact him regarding
   attorneys' fees in this matter prior to filing the pending motions.  (Doc. Nos. 114 at 2; 114-1 at ¶

27  3.)  In response, plaintiff's counsel Steve Mikhov submitted a declaration in which he states that
   plaintiff's counsel sent FCA's counsel an email on May 15, 2020 regarding that issue, but FCA's

28  counsel did not respond.  (Doc. Nos. 116 at 8; 116-1 at ¶ 4.)

1 pending motion for attorneys' fees and motion for costs and expenses.  (Doc. Nos. 110, 111.)  On

2 June 23, 2020, FCA filed its oppositions to the pending motions.  (Doc. Nos. 113, 114.)  On June

3 30, 2020, plaintiff filed his replies thereto.  (Doc. Nos. 115, 116.)

4 **LEGAL STANDARD**

5 Under California's Song-Beverly Act, "if [a] buyer prevails in an action . . ., the buyer

6 shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate

7 amount of costs and expenses, including attorney's fees based on actual time expended,

8 determined by the court to have been reasonably incurred by the buyer in connection with the

9 commencement and prosecution of such action."  Cal. Civ. Code § 1794(d).  "The plain wording

10 of the statute requires the trial court to base the fee award upon actual time expended on the case,

11 as long as such fees are *reasonably* incurred—both from the standpoint of time spent and the

12 amount charged."  *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App. 4th 785,

13 817 (2006).

> It requires the trial court to make an initial determination of the actual time expended; and then to ascertain whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable.  These circumstances may include, but are not limited to, factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved.  If the time expended or the monetary charge being made for the time expended are not reasonable under all the circumstances, then the court must take this into account and award attorney fees in a lesser amount.  A prevailing buyer has the burden of showing that the fees incurred were allowable, were reasonably necessary to the conduct of the litigation, and were reasonable in amount.

21 *Nightingale v. Hyundai Motor Am.*, 31 Cal. App. 4th 99, 104 (1994) (citation and internal

22 quotation marks omitted); *see also Goglin v. BMW of N. Am., LLC*, 4 Cal. App. 5th 462, 470

23 (2016).  Under a contingent fee arrangement, "a prevailing buyer represented by counsel is

24 entitled to an award of reasonable attorney fees for time reasonably expended by his or her

25 attorney."  *Nightingale,* 31 Cal. App. 4th at 105 n.6.

26 "The determination of what constitutes a reasonable fee generally begins with the

27 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly

28 rate."  *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 154 (2006) (quoting *PLCM*

3

*Group, Inc. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000)).  The court will apply the lodestar method to the Song-Beverly Act because "the statutory language of section 1794, subdivision (d), is reasonably compatible with a lodestar adjustment method of calculating attorney fees, including use of fee multipliers."  *Robertson*, 144 Cal. App. 4th at 818; *see also Warren v. Kia Motors Am., Inc.*, 30 Cal. App. 5th 24, 35 (2018).  Moreover, because "[the California] Supreme Court has held that the lodestar adjustment method is the prevailing rule for statutory attorney fee awards to be applied in the absence of clear legislative intent to the contrary, [the lodestar adjustment method] . . . is applicable to attorney fee awards under section 1794, subdivision (d)."  *Robertson*, 144 Cal. App. 4th at 818–19 (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1135–36 (2001)).  As the California Supreme Court has explained:

> [T]he lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award.  The purpose of such adjustment is to fix a fee at the fair market value for the particular action.  In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services.

*Ketchum*, 24 Cal. 4th at 1132 (internal citation omitted).  In addition, "[a] contingent fee contract, since it involves a gamble on the result, may properly provide for a larger compensation than would otherwise be reasonable."  *Id.*  "Decisions by other courts regarding the reasonableness of the rate sought may also provide evidence to support a finding of reasonableness."  *Hellenberg v. Ford Motor Co.*, No. 18-cv-2202-JM-KSC, 2020 WL 1820126, at *1 (S.D. Cal. Apr. 10, 2020).

In opposing a request for attorneys' fees, "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice."  *Etcheson v. FCA US LLC*, 30 Cal. App. 5th 831, 848 (2018) (quoting *Premier Med. Mgmt. Sys. v. Cal. Ins. Guar. Assoc.*, 163 Cal. App. 4th 550, 564 (2008)).  Instead, the opposing party must demonstrate that the hours claimed are duplicative or excessive.  *Premier Med. Mgmt. Sys.*, 163 Cal. App. 4th at 562, 564; *Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 101 (2009) ("The party opposing the fee award can

4

1   be expected to identify the particular charges it considers objectionable.").  "To challenge

2   attorneys' fees as excessive, the challenging party must 'point to the specific items challenged,

3   with a sufficient argument and citations to the evidence.'"  *Nai Hung Li v. FCA US LLC*, No.

4   2:17-cv-06290-R-JEM, 2019 WL 6317769, at *1 (C.D. Cal. July 1, 2019) (quoting *Premier Med.*

5   *Mgmt. Sys.*, 163 Cal. App. 4th at 564).

6          With this guidance in mind, the court turns to consider plaintiff's pending motions.

7                                          **ANALYSIS**

8          As the buyer who prevailed in this lawsuit, plaintiff is entitled to an award of reasonably

9   incurred attorneys' fees, costs, and expenses.  *See* Cal. Civ. Code § 1794(d).  Here, plaintiff

10  seeks:  (1) an award of attorneys' fees in the amount of $56,610.00; (2) a lodestar multiplier of

11  0.5, in the amount of $28,305.00; and (3) an award of actual costs and expenses incurred in the

12  amount of $15,342.94.  (Doc. Nos. 110-1 at 25; 111 at 2.)  Plaintiff seeks a total award of

13  $100,257.94.  (*Id.*)  FCA contends that the lodestar requested by plaintiff is unreasonable and that

14  a positive multiplier is not warranted in this case.  (Doc. No. 114 at 2–3.)  FCA also objects to the

15  costs and expenses related to plaintiff's expert for which plaintiff seeks reimbursement.  (Doc.

16  No. 113 at 1.)

17  **A.     Attorneys' Fees Request**

18         Plaintiff was represented by three law firms in this matter:  (1) the Knight Law Group

19  ("Knight Law"), which commenced this action on plaintiff's behalf and provided legal services

20  leading up to trial; (2) Wirtz Law APC ("Wirtz Law"), which associated into this action as lead

21  trial counsel to provide services relating to and in anticipation of the trial in this action; and (3)

22  LA Law Center, PC ("LA Law"), which served as plaintiff's probate counsel in probate court.[2]

23  (Doc. Nos. 110-2 at ¶ 2; 110-3 at ¶ 11; 110-1 at 13).  Knight Law billed a total of $31,535.00.

24  (Doc. No. 110-2 at ¶ 2).  Wirtz Law billed a total of $21,575.00.  (*Id.*)  LA Law billed a flat rate

---

26  [2]  Knight Law also hired attorneys from two other firms, Hackler Daghighian Martino & Novak,
    P.C. ("HDMN") and Altman Law Group, to specially appear and handle tasks related to certain
27  expert depositions.  (Doc. No. 116 at 11–12.)  The billing entries for those attorneys are included
    in the records provided by Knight Law in support of the pending motions.  (Doc. No. 110-2 at
28  22–28.)

                                              5

1    of $3,500.00 for attorney Joseph McHugh's legal services provided in connection with the

2    proceedings in probate court.  (Doc. No. 110-4 at ¶ 4.)

3        To assess the reasonableness of plaintiff's requested amount for attorneys' fees, the court

4    will first consider the reasonableness of the number of hours expended by his attorneys, then

5    address the reasonableness of their hourly rates, and finally consider whether a lodestar multiplier

6    is warranted here.

7        1.    Reasonableness of Number of Hours Expended

8        Knight Law's billing records indicate that fourteen attorneys expended (or anticipated

9    expending) a total of 99.8 billable hours on this action, billing a total of $31,535.00 for its efforts

10   in prosecuting this case.  (Doc. No. 110-2 at 28.)  Wirtz Law's billing records indicate that four

11   attorneys and two paralegals expended a total of 62.4 billable hours,[3] billing a total of $21,575.00

12   for its efforts on this matter.  (Doc. No. 110-3 at 18.)  FCA contends that the number of hours

13   billed by plaintiff's attorneys is unreasonable for several reasons.  The court will address each of

14   FCA's arguments in turn.

15       First, FCA argues that none of the time spent (or anticipated to be spent) related to the

16   pending motions should be included in any award of attorneys' fees because plaintiff's counsel

17   did not attempt to resolve the amount of fees, expenses, and costs with FCA prior to filing the

18   motions.  (Doc. No. 114 at 6–7.)  As noted above, the parties dispute whether any such attempt

19   was made.  Attorney Steve Mikhov declares that Knight Law emailed FCA's counsel on May 15,

20   2020 regarding its demand for attorneys' fees and costs, and he attached a copy of that email as

21   an exhibit to his declaration, but reports that FCA's counsel did not respond.  (Doc. No. 116-3 at

22   ¶ 4, Ex. B.)  Moreover, after learning in FCA's opposition that FCA's counsel claims to have not

23   received Knight Law's email, Knight Law again emailed FCA's counsel before filing plaintiff's

24   reply to attempt to resolve the matter of attorneys' fees and costs informally.  (*Id.*)  According to

25   attorney Mikhov, FCA's counsel again did not respond.  (*Id.*)  Given this factual dispute, the

26   _____

27   [3]  Although the summary provided by Wirtz Law states that a total of 62.6 hours were expended
     on this case, the court has adjusted the total to 62.4 hours to reflect the 0.2 hours of time
     expended by a paralegal on September 18, 2018 that were not charged.  (*See* Doc. No. 110-3 at
28   10, 18.)

1    court is not persuaded by FCA's argument that all of the time plaintiff's counsel spent related to

2    the pending motions should be excluded.

3         Although FCA does not explicitly challenge Knight Law's anticipated billing entries, the

4    court has reviewed the entries for anticipated time to review FCA's oppositions to the pending

5    motions and prepare plaintiff's replies thereto, as well as time for preparation and attendance at a

6    hearing on the pending motions.  Because the court took the pending motions under submission

7    shortly after plaintiff filed them and notified the parties that no hearing would be held—and

8    indeed no hearing was held—the court will not award the one hour of time that attorney

9    Devabose anticipated expending related to a hearing.  As to the other entries, attorney Devabose

10   anticipated spending 2.0 hours reviewing FCA's opposition to the motion for attorneys' fees, 4.0

11   hours drafting plaintiff's reply thereto, 0.5 hours reviewing FCA's opposition to plaintiff's

12   motion for costs and expenses, and 1.0 hours drafting plaintiff's reply thereto.  (Doc. No. 110-2 at

13   28.)  The court notes that plaintiff did not provide the court with an update to reflect the actual

14   attorney hours spent on these tasks.  The court declines to award attorney Devabose the full 7.5

15   hours that he anticipatorily billed to review and analyze FCA's opposition to the pending motions

16   and to draft replies thereto.  No evidence of the time actually spent on these tasks was presented

17   to the court.  Nevertheless, the court finds that an award of four hours for the performance of

18   those tasks is reasonable given how brief the oppositions were and the fact that it is readily

19   apparent from the face of the replies that attorney Devabose relied upon filings from other actions

20   as templates.  Thus, the court will reduce attorney Devabose's requested total time by 4.5 hours to

21   account for the hearing that was not actually held and the unsubstantiated, anticipated billing

22   entries.

23        Second, FCA argues that certain post-settlement expenditures were unnecessary and

24   should not be recoverable.  (Doc. No. 114 at 7–8.)  In particular, FCA contends that plaintiff

25   should not be able to recover for any of the fees incurred for the purposes of his Rule 25 motion

26   to substitute as named plaintiff following the death of the original plaintiff, Larry Powell, because

27   FCA had no intention of opposing that motion, and the parties had already agreed to settle this

28   action for the amount FCA had previously offered.  (*Id.*)  The court is not persuaded that because

1    FCA had no intention of opposing the Rule 25 motion, plaintiff's counsel's expenditure of time to

2    research (4.5 hours) and prepare the motion (5.5) were rendered unreasonable.  In addition, FCA

3    points to the court to no authority to support its argument that because the parties had already

4    reached an agreement to settle, the hours spent on the Rule 25 motion—a necessary step in order

5    to proceed in settling this action in light of the original plaintiff's death—were somehow rendered

6    unreasonable.  The court finds that the hours spent by plaintiff's counsel on the Rule 25 motion

7    were reasonably incurred in connection with the prosecution of this action and will thus not

8    exclude them from an award of attorneys' fees.

9           FCA also urges the court to disallow any reimbursement for the time spent by plaintiff's

10   probate counsel, attorney McHugh.  (Doc. No. 114 at 7–8.)  Attorney McHugh declared that he

11   "was engaged to assist in appointing a special administrator of the Estate of Larry Powell" and

12   that he charged a flat rate of $3,500.00 to "perform all necessary tasks to achieve that

13   appointment."  (Doc. No. 110-4 at ¶ 4.)  Attorney McHugh estimated that he spent 12 hours

14   working on this matter, and that his normal hourly rate is $400 per hour.  (*Id.*)  FCA points to a

15   lack of clarity in attorney McHugh's declaration, particularly with respect to who exactly retained

16   him, whether he has already been paid, and whether the services he provided to plaintiff went

17   "beyond the needs applicable to this case."  (Doc. No. 114 at 7–8.)  In reply, plaintiff contends

18   that FCA's arguments are not relevant, and that what matters instead, is that without attorney

19   McHugh's assistance obtaining plaintiff's appointment as special administrator for purposes of

20   this action, plaintiff's claims would have been dismissed for lack of prosecution.  (Doc. No. 116

21   at 9.)  According to plaintiff, attorney McHugh's work on this matter was necessary to the

22   prosecution of this case and his flat attorneys' fee of $3,500 should be recoverable.  (*Id.*)

23          The court notes that neither party has provided any authority in support of their arguments

24   on this point.  Absent authority to the contrary—which plaintiff has not provided—the court is

25   not persuaded that when a plaintiff passes away during litigation and the putative substitute

26   plaintiff incurs fees for probate services, that the defendant in the pending litigation should bear

27   the expense of reimbursing those fees.  It is not clear to the court that those probate fees are not

28   more appropriately borne by the estate of the decedent plaintiff—and perhaps here, Larry

1   Powell's estate has already paid or is obligated to pay for attorney McHugh's services.  FCA's

2   arguments are well-taken and, in any event, ultimately the burden rests with plaintiff to support

3   his request for an award of attorneys' fees.  The court finds that with regard to the fees incurred

4   by attorney McHugh, plaintiff has not met that burden.  Accordingly, the court will not award LA

5   Law the $3,500 flat fee charged by attorney McHugh for his probate services.

6          Third, FCA challenges Wirtz Law attorney Jessica Underwood's entry dated January 2,

7   2019 for travel time of 6.0 hours to attend the mandatory settlement conference.  (Doc. No. 114 at

8   8.)  Specifically, FCA contends that this charge is inflated and unreasonable because the billing

9   description states:  "Travel (from Fresno) to Bakersfield the night before the Mandatory

10   Settlement Conference," even though Bakersfield is 110 miles from Fresno—not 6 hours away.

11   (Doc. No. 114 at 8.)  In reply, plaintiff contends that FCA made unwarranted assumptions

12   regarding attorney Underwood's entry and clarifies that she "flew into Fresno then drove to

13   Bakersfield" and "six hours was her total travel time, including the flight."  (Doc. No. 116 at 10.)

14   The court does not agree with plaintiff's characterization of FCA's assumptions as *unwarranted*.

15   The billing entry description states what it states; it says nothing about a flight or travel from San

16   Diego to Fresno.  Nevertheless, with the clarification plaintiff now provides, the court finds that

17   six hours is not an unreasonable amount of time for attorney Underwood to travel from San Diego

18   to Bakersfield to attend the mandatory settlement conference.  Thus, the court will not reduce the

19   number of hours awarded to attorney Underwood for this entry.

20          Fourth, FCA contends that plaintiff should not be able to recover any attorneys' fees for

21   the time spent by attorneys from HDMN and Altman Law Group, who specially appeared in this

22   matter and whose time has been included in the billing records submitted by Knight Law.  (Doc.

23   No. 114 at 9.)  FCA points to a lack of evidence that any such special appearances were entered

24   for these three attorneys:  Christopher Urner (Altman Law), Lauren Martin (HDMN), and Larry

25   Castruita (HDMN).  (*Id.* at 9.)  In reply, plaintiff lists several attorneys who worked for FCA on

26   this matter but for whom an appearance was not entered.  (Doc. No. 116 at 11.)  Moreover, the

27   court finds that FCA's argument rings hollow in part because attorney Lauren Martin did in fact

28   enter a notice of appearance in this case on July 2, 2018.  (Doc. No. 30.)  Without citing any

authority, FCA contends that "it should not be made to pay Knight Law Group for the work of attorneys that it does not employ." (Doc. No. 114 at 9.) But whereas here, those attorneys specially appeared to handle tasks associated with certain expert depositions, and the performance of that work was reasonably necessary to the prosecution of this action, plaintiff is entitled to recover those attorneys' fees. Notably, FCA does not contest the amount of time that these attorneys spent performing their tasks on this matter. Accordingly, the court will not exclude, in whole or in part, the hours expended by attorney Urner, attorney Martin, and attorney Castruita.

Finally, FCA asserts that plaintiff's attorneys overstaffed this case by using eighteen different attorneys and two paralegals, and thus a significant reduction across the board is warranted because overstaffing creates inefficiency. (Doc. No. 114 at 2.) While under some circumstances a reduction in an award of attorneys' fees due to the number of attorneys who billed time to a case has been found to be within the trial court's discretion, *see Morris v. Hyundai Motor America*, 41 Cal. App. 5th 24, 36–40 (2019), those circumstances are not present here. Notably, FCA has not pointed to any specific instances of padding or stacking attorneys, or any other inefficiencies, that would warrant a reduction here. *See Donahue v. Donahue*, 182 Cal. App. 4th 259, 271 (2010) (noting that "[r]easonable compensation does not include compensation for 'padding' in the form of inefficient or duplicative efforts") (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131–1132 (2001)). FCA fails to provide any authority in support of its position that solely because multiple attorneys work on a case, this court should reduce the number of attorney hours when considering an application for an award of attorneys' fees. To the contrary, it has been "recognized that 'the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort.'" *McGrath v. County of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995) (quoting *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989)). Thus, the court will not reduce the amount of hours awarded merely because several attorneys worked on this matter.

/////

/////

/////

/////

10

The court has reviewed the billing records submitted by Knight Law and Wirtz Law and concludes that, for the most part, the time billed was reasonably incurred in the commencement and prosecution of this action.  Thus, the court will include in the lodestar calculation of an attorneys' fee award the following hours:

| Knight Law Attorney | Hours Requested | Hours Awarded |
|---|---|---|
| Attorney Alastair Hamblin | 8.9 | 8.9 |
| Attorney Amy Morse | 5.9 | 5.9 |
| Attorney Christopher Urner | 4.0 | 4.0 |
| Attorney Christopher Swanson | 1.6 | 1.6 |
| Attorney Deepak Devabose | 16.9 | 12.4 |
| Attorney Daniel Kalinowski | 17.7 | 17.7 |
| Attorney Diane Hernandez | 13.1 | 13.1 |
| Attorney George Semaan | 7.2 | 7.2 |
| Attorney Heidi Alexander | 4.5 | 4.5 |
| Attorney Kristina Stephenson-Cheang | 2.0 | 2.0 |
| Attorney Lauren Martin | 6.3 | 6.3 |
| Attorney Larry Castruita | 4.8 | 4.8 |
| Attorney Russell Higgins | 1.9 | 1.9 |
| Attorney Steve Mikhov | 5.0 | 5.0 |
| Total Hours | 99.8 | 95.3 |

| Wirtz Law Attorney/Staff | Hours Requested | Hours Awarded |
|---|---|---|
| Attorney Richard M. Wirtz | 1.6 | 1.6 |
| Attorney Jessica Underwood | 27.0 | 27.0 |
| Paralegal Andrea Munoz | 3.9 | 3.9 |
| Paralegal Rebecca Evans | 18.0 | 18.0 |
| Attorney Amy Rotman | 10.9 | 10.9 |
| Attorney Erin K. Barns | 1 | 1 |
| Total Hours | 62.4 | 62.4 |

2.      Reasonableness of the Hourly Rates to be Applied

Next, the court must determine whether the hourly rates requested by plaintiff's attorneys are reasonable.  Under California law, when awarding attorneys' fees under Civil Code § 1794(d), the relevant inquiry is whether "the monetary charge being made for the time expended [is] reasonable" under all the circumstances including "factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved."  *Goglin v. BMW of N. Am., LLC,* 4 Cal. App. 5th 462, 470 (2016) (quoting *Nightingale,* 31 Cal. App. 4th at 104).  California

11

1    courts therefore focus on the reasonable hourly rate for the work performed by the counsel who

2    did that work, regardless of the forum in which that work was performed and without regard to

3    typical hourly rates in the forum in which the matter was litigated.[4]  *See Goglin*, 4 Cal. App. 5th

4    at  470 (affirming a fee award applying a hourly rate of $575 per hour in a Song-Beverly Act case

5    on the grounds that the trial court had considered the evidence that the client agreed to

6    compensate counsel at the rate of $575 an hour (later increased to $625), other state and federal

7    courts had awarded the attorney comparable rates in similar cases, and the trial court had

8    observed the attorney's skills first hand, while not even mentioning the prevailing rates in the trial

9    court's area); *see also Filiberto Negrete v. Ford Motor Co. et al.*, No. 18-cv-1972-DOC-KKx,

10

11    [4]  In awarding attorneys' fees under the Song-Beverly Act, other district courts have required
     "[t]he fee applicant . . . [to] produc[e] satisfactory evidence that the requested rates are in line

12    with those prevailing in the community for similar services of lawyers of reasonably comparable
     skill and reputation."  *Base v. FCA US LLC*, No. 17-cv-01532-JCS, 2019 WL 4674368, at *4

13    (N.D. Cal. Sept. 25, 2019) (citing *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir.
     1987)); *see also Self v. FCA US LLC*, No. 1:17-cv-01107-SKO, 2019 WL 1994459, at *4–5 (E.D.

14    Cal. May 6, 2019); *Hall v. FCA US LLC*, No. 1:16-cv-0684-JLT, 2018 WL 2298431, at *5–6

15    (E.D. Cal. May 21, 2018).  Citing to Ninth Circuit and Supreme Court precedent, these courts
     have stated that the "relevant community" in determining a prevailing market rate is the forum in

16    which the district court sits and have then analyzed whether the rates requested by counsel are
     reasonable in light of rates paid to attorneys of similar skill and experience in the forum district.

17    *See, e.g.*, *Self*, 2019 WL 1994459, at *4–6.  This, however, is the framework that federal courts
     apply to motions seeking attorneys' fees pursuant to a federal statute.  The undersigned is aware

18    of no authority holding that a federal court must apply that same framework when awarding
     attorneys' fees pursuant to a state statute.  Indeed, the California Court of Appeal in *Goglin* did

19    not engage in that forum-based rate analysis and, as evidenced by the many state court fee orders
     that the parties have pointed this court to, state courts generally do not engage in that analysis.

20    The undersigned, therefore, considers the pending motion under the standard articulated by the
     California Court of Appeal in *Goglin* and will determine "whether the monetary charge being

21    made for the time expended [is] reasonable" in light of "the complexity of the case and
     procedural demands, the skill exhibited and the results achieved."  4 Cal. App. 5th at 470 (internal

22    quotation marks and citation omitted).  This approach will appropriately result in plaintiff's
     counsel being compensated at the same hourly rates they would have received in state court rather

23    than a lower rate based solely on the removal of the action to federal court.  Even if the rate
     determination framework utilized in motions seeking attorneys' fees pursuant to federal statutes

24    were to apply in this case, the court notes that the hourly rates found to be reasonable by this
     order would be the same under that framework too.  For under the "relevant community" analysis,

25    this court would look to the orders of state courts within the Eastern District of California and
     conclude that those rates are consistent with those prevailing in the community for similar

26    services.  *See Tenorio v. Gallardo*, No. 1:16-cv-00283-DAD-JLT, 2019 WL 3842892, at *2 n.1
     (E.D. Cal. Aug. 15, 2019).

27

28

1   2019 WL 4221397, at *3 (C.D. Cal. June 5, 2019) ("Plaintiff has demonstrated that counsel has

2   been awarded attorneys' fees at similar rates under the Song-Beverly Act.  Such evidence is

3   generally sufficient to show that an attorney's hourly rates are reasonable.") (internal citation

4   omitted).  The fee applicant bears the burden of producing satisfactory evidence that the fees

5   incurred were "reasonable in amount."  *Goglin*, 4 Cal. App. 5th at 470 (quoting *Nightingale*, 31

6   Cal. App. 4th at 104); *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

7          Plaintiff requests an attorneys' fee award based on the following hourly rates for its

8   attorneys who worked on this matter:

| Knight Law Attorney | Requested Hourly Rate | Years of Practice |
|---|---|---|
| Attorney Alastair Hamblin | $325.00 | 8 years[5] |
| Attorney Amy Morse | $350.00 | 7 years |
| Attorney Christopher Urner | $400.00 | 4 years |
| Attorney Christopher Swanson | $375.00 | 9 years[6] |
| Attorney Deepak Devabose | $275.00 | 6 years |
| Attorney Daniel Kalinowski | $250.00 | 5 years |
| Attorney Diane Hernandez | $375.00 | 23 years |
| Attorney George Semaan | $225.00 | 4 years |
| Attorney Heidi Alexander | $325.00 | 10 years |
| Attorney Kristina Stephenson-Cheang | $350.00 | 12 years |
| Attorney Lauren Martin | $250.00 | 3 years |
| Attorney Larry Castruita | $350.00 | 9 years |
| Attorney Russell Higgins | $450.00 | 17 years |
| Attorney Steve Mikhov | $500.00 | 17 years |

19  (Doc. No. 110-2 at 28.)

20  /////

21  /////

---

22  [5]  Plaintiff did not provide any specific information regarding when Alastair Hamblin began

23  practicing law, but rather reported only that he "graduated from Southwestern Law School in
    2007" and began working at Knight Law Group in 2016.  (Doc. 110-2 at 9.)  However, the court

24  "may take judicial notice of the State Bar of California's website regarding attorneys' dates of
    admission to the Bar."  *Davis v. Hollins Law*, 25 F. Supp. 3d 1292, 1298 n. 5 (E.D. Cal. 2014).

25  Thus, the court takes judicial notice of the admission date of Alastair Hamblin as February 2012,
    as represented on the website of the State Bar of California.  *See id.*; Fed. R. Evid. 201(b).

26

27  [6]  As with attorney Hamblin, plaintiff did not provide any specific information regarding when
    attorney Christopher Swanson began practicing law, but the court takes judicial notice of his

28  admission date of December 2011, as represented on the website of the State Bar of California.

| Wirtz Law Attorney/Staff | Requested Hourly Rate | Years of Practice |
|---|---|---|
| Attorney Richard M. Wirtz | $650.00 | 32 years |
| Attorney Jessica Underwood | $400.00 | 5 years |
| Paralegal Andrea Munoz | $200.00 | 2 years |
| Paralegal Rebecca Evans | $200.00 | 5 years |
| Attorney Amy Rotman | $450.00 | 8 years |
| Attorney Erin K. Barns | $450.00 | 8 years |

(Doc. No. 110-3 at 18.)

In support of these requested rates, plaintiff has submitted the declaration of Knight Law attorney Steve Mikhov and Wirtz Law attorney Richard M. Wirtz. (Doc. Nos. 110-2; 110-3) In their declarations, attorneys Mikhov and Wirtz describe the experience level and educational background of each of the attorneys that worked on this matter, and they assert that their hourly rates are reasonable and consistent not only with the rates that courts have approved for these specific attorneys—including this court—but also with the rates that courts have approved for attorneys of comparable levels of experience in other consumer cases. (*Id.*) Attached to their declarations are several hourly rate determinations by state courts in Song-Beverly Act actions with respect to some of the attorneys who worked on this case, showing that courts have awarded the same hourly rates that are being requested in this action. (Doc. Nos. 110-2 at 13–19, Exs. D–S; 110-3 at 6–8, Exs. D–H.) Moreover, after reviewing rates awarded by various superior courts in California, the undersigned recently issued orders awarding the following hourly rates to the following attorneys who have appeared in this action: $350.00 for attorney Morse; $250.00 for attorney Devabose; $350.00 for attorney Stephenson-Cheang; $500.00 for attorney Mikhov; $325.00 for attorney Hamblin; $250.00 for attorney Swanson; $250.00 for attorney Kalinowski; $350 for attorney Hernandez; $225.00 for attorney Semaan; $250.00 for attorney Martin; $500.00 for attorney Wirtz; $300.00 for attorney Castruita; $400.00 for attorney Higgins; and $250.00 for attorney Underwood. *See Sekula v. FCA US LLC*, No. 1:17-cv-00460-DAD-JLT, 2019 WL 5290903, at *7 (E.D. Cal. Oct. 18, 2019); *Rueda v. FCA US LLC*, No. 1:17-cv-00968-DAD-JLT, 2020 WL 469333, at *7 (E.D. Cal. Jan. 29, 2020); *Figures v. FCA US LLC*, No. 1:17-cv-00618-DAD-JLT, 2020 WL 820164, at *8 (E.D. Cal. Feb. 19, 2020); *Aviles v. Subaru of Am., Inc.*, No.

1   1:18-cv-01544-DAD-SKO, 2020 WL 868842, at *6 (E.D. Cal. Feb. 21, 2020).

2        FCA does not specifically challenge the hourly rates sought by Knight Law.  FCA does,

3   however, challenge the reasonableness of the hourly rates sought by Wirtz Law because the

4   lawyers of that firm purportedly made no effort "to reduce their rates to comport with rates

5   awarded in prior decisions by this Court . . .."  (Doc. No. 114 at 8.)  In particular, FCA points to

6   this court's reduction of attorney Wirtz's hourly rate to $500 per hour and attorney Underwood's

7   rate to $250 per hour in *Rueda v. FCA US LLC*, No. 1:17-cv-00968-DAD-JLT, 2020 WL 469333,

8   at *7 (E.D. Cal. Jan. 29, 2020).  (*Id.* at 9.)  FCA suggests that the court should similarly reduce

9   the rates for Wirtz Law attorneys and paralegals in this case as well.  (*Id.*)

10       Because "the reasonable value of attorney services is variously defined as the hourly

11   amount to which attorneys of like skill in the area would typically be entitled," *Ketchum*, 24 Cal.

12   4th at 1133, the court finds that evidence of what some of the attorneys have previously been

13   awarded when litigating other Song-Beverly actions does assist this court in determining what the

14   reasonable hourly rates should be in this case.  *See also Goglin*, 4 Cal. App. 5th at 470; *Filiberto*

15   *Negrete*, 2019 WL 4221397, at *3.

16       Having considered the various state court orders submitted by plaintiff as well as other

17   evidence, the court concludes that the following hourly rates as to each of plaintiff's attorneys are

18   reasonable:

| Knight Law Attorney | Hourly Rate to be Awarded | Years of Practice |
|---|---|---|
| Attorney Alastair Hamblin | $325.00 | 8 years |
| Attorney Amy Morse | $350.00 | 7 years |
| Attorney Christopher Urner | $225.00 | 4 years |
| Attorney Christopher Swanson | $350.00 | 9 years |
| Attorney Deepak Devabose | $275.00 | 6 years |
| Attorney Daniel Kalinowski | $250.00 | 5 years |
| Attorney Diane Hernandez | $375.00 | 23 years |
| Attorney George Semaan | $225.00 | 4 years |
| Attorney Heidi Alexander | $325.00 | 10 years |
| Attorney Kristina Stephenson-Cheang | $350.00 | 12 years |
| Attorney Lauren Martin | $250.00 | 3 years |
| Attorney Larry Castruita | $350.00 | 9 years |
| Attorney Russell Higgins | $400.00 | 17 years |
| Attorney Steve Mikhov | $500.00 | 17 years |

| Wirtz Law Attorney/Staff | Hourly Rate to be Awarded | Years of Practice |
|---|---|---|
| Attorney Richard M. Wirtz | $500.00 | 32 years |
| Attorney Jessica Underwood | $250.00 | 5 years |
| Paralegal Andrea Munoz | $75.00 | 2 years |
| Paralegal Rebecca Evans | $100.00 | 5 years |
| Attorney Amy Rotman | $350.00 | 8 years |
| Attorney Erin K. Barns | $350.00 | 8 years |

### 3.    Lodestar Calculation

Based on the hours and hourly rates that the court has determined are reasonable in this matter, the lodestar here is $29,462.50 for Knight Law and $13,807.50 for Wirtz Law, for a total of $43,270.00.  The court's calculations are reflected below:

| Knight Law Attorney | Hours Awarded | Hourly Rate Awarded | Lodestar |
|---|---|---|---|
| Attorney Alastair Hamblin | 8.9 | $325.00 | $2,892.50 |
| Attorney Amy Morse | 5.9 | $350.00 | $2,065.00 |
| Attorney Christopher Urner | 4.0 | $225.00 | $900.00 |
| Attorney Christopher Swanson | 1.6 | $350.00 | $560.00 |
| Attorney Deepak Devabose | 12.4 | $275.00 | $3,410.00 |
| Attorney Daniel Kalinowski | 17.7 | $250.00 | $4,425.00 |
| Attorney Diane Hernandez | 13.1 | $375.00 | $4,912.50 |
| Attorney George Semaan | 7.2 | $225.00 | $1,620.00 |
| Attorney Heidi Alexander | 4.5 | $325.00 | $1,462.50 |
| Attorney Kristina Stephenson-Cheang | 2.0 | $350.00 | $700.00 |
| Attorney Lauren Martin | 6.3 | $250.00 | $1,575.00 |
| Attorney Larry Castruita | 4.8 | $350.00 | $1,680.00 |
| Attorney Russell Higgins | 1.9 | $400.00 | $760.00 |
| Attorney Steve Mikhov | 5.0 | $500.00 | $2,500.00 |
| | | Total: | $29,462.50 |

| Wirtz Law Attorney | Hours Awarded | Hourly Rate Awarded | Lodestar |
|---|---|---|---|
| Attorney Richard M. Wirtz | 1.6 | $500.00 | $800.00 |
| Attorney Jessica Underwood | 27.0 | $250.00 | $6,750.00 |
| Paralegal Andrea Munoz | 3.9 | $75.00 | $292.50 |
| Paralegal Rebecca Evans | 18.0 | $100.00 | $1,800.00 |
| Attorney Amy Rotman | 10.9 | $350.00 | $3,815.00 |
| Attorney Erin K. Barns | 1 | $350.00 | $350.00 |
| | | Total: | $13,807.50 |

1          4.          Lodestar Multiplier

2          Next, plaintiff urges this court to apply a multiplier of 0.5 to the lodestar in this case.

3    (Doc. No. 110-1 at 22–24.)  Specifically, plaintiff argues that the contingent nature of this

4    litigation warrants a 0.2 multiplier and that the delay in payment warrants a 0.3 multiplier.  (*Id.* at

5    24.)  According to plaintiff, "there always existed the possibility Plaintiff would not prevail," and

6    that "[t]he risk was compounded by the fact that Plaintiff's attorneys advanced all litigation costs

7    and expenses without reimbursement."  (*Id.* at 23.)  FCA argues that an upward multiplier is not

8    warranted here because plaintiff's attorneys' "high billing rates already reflect [their] purported

9    expertise" in consumer protection cases like this one and there was no novelty or difficulty in this

10   case.  (Doc. No. 114 at 10.)  FCA also argues that because plaintiff's attorneys were not

11   precluded from taking on other cases and the contingent nature of this case was minimal, the

12   lodestar figure already represents the fair market value of their legal services such that the award

13   of a multiplier is not necessary.  (*Id.* at 11.)

14         The lodestar may be "augmented . . . by taking various relevant factors into account,

15   including (1) the novelty and difficulty of the questions involved and the skill displayed in

16   presenting them; (2) the extent to which the nature of the litigation precluded other employment

17   by the attorneys; and (3) the contingent nature of the fee award, based on the uncertainty of

18   prevailing on the merits and of establishing eligibility for the award."  *Robertson*, 144 Cal. App.

19   4th at 819; *see also Warren v. Kia Motors Am., Inc*., 30 Cal. App. 5th 24, 35 (2018).

20         Here, plaintiff responds to FCA's argument with a passing comment that "[s]urely, if

21   Plaintiff's counsel did not take this case on, it would have spent the hours incurred in this matter

22   on another matter."  (Doc. No. 116 at 13.)  But, plaintiff does not explicitly contend that his

23   attorneys were precluded from seeking other employment or provide evidence in that regard.

24   Instead, plaintiff argues that "[t]his case required a range of specialized knowledge including:

25   (1) an understanding of the full scope of consumer protection laws, . . .; (2) knowledge of the

26   intricacies of automobiles . . .; and (3) knowledge of auto manufactures' and dealers' policies and

27   protocols for repairing vehicles and complying with their legal obligations."  (Doc. No. 110-1 at

28   18.)  However, the fact that plaintiff's attorneys had to become familiar with a case is not the type

of novelty or difficulty that ordinarily justifies an upward multiplier.  Moreover, as plaintiff admits, his "attorneys have acquired knowledge and insight about these issues over the course of many years of litigation" (*id.* at 18), and they do not "spend unreasonable time preparing pleadings because they are able to use documents from other cases that need only be edited, rather than written from scratch," (*id.* at 20).  Indeed, the issues presented by this case have recently been addressed in several cases before this court, many of which involved the same attorneys who appeared in this action.  *See, e.g.*, *Sekula*, 2019 WL 5290903; *Self*, 2019 WL 1994459; *Hall*, 2018 WL 2298431; *Garcia v. FCA US LLC*, 1:16-cv-00730-JLT (E.D. Cal. March 7, 2018).  Finally, with respect to counsel's performance, the court has reviewed the pleadings filed in this action and finds that the skills displayed by counsel were, on balance, average at best, given that it is readily apparent from the face of the pleadings filed by plaintiff's counsel that they relied upon pleadings from other actions as templates.  The court therefore finds that the first two factors that could justify the application of a multiplier are not present here because this was a Song-Beverly action of ordinary complexity and difficulty.

Moreover, the court concludes that the contingent nature of this action does not weigh in favor of an upward multiplier.  "The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important . . . rights . . . into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis."  *Ketchum*, 24 Cal. 4th at 1132.

> A contingent fee must be higher than a fee for the same legal services paid as they are performed.  The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.  The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans.

*Id.* (citation and internal quotation marks omitted).  The court concludes that an upward multiplier based on the contingent risk is not warranted here because that factor is outweighed by the other factors the court has considered, namely that this case was not novel, complex, or difficult, especially because the disputed facts and issues to be resolved were minimal.

/////

1    Similarly, the court finds that an upward multiplier due to any delay in payment of fees to

2    plaintiff's counsel is not warranted here.  Plaintiff contends that "FCA dragged this case out for

3    years before finally making a reasonable settlement offer."  (Doc. No. 110-1 at 24.)  Be that as it

4    may, the court is not convinced that FCA is solely to blame for the delay in resolving this action

5    and even if it was, it does not appear to the court that any delay was so egregious so as

6    to justify an upward multiplier.

7    Accordingly, the court declines to apply a multiplier to the lodestar amount under the

8    circumstances of this case.

9    **B.     Motion for Costs and Expenses**

10    Pursuant to California Civil Code § 1794(d), plaintiff seeks an award of $15,342.94 as

11    reimbursement for costs and expenses incurred by plaintiff's counsel in litigating this matter.

12    (Doc. No. 111; 111-1 at 2.)  Plaintiff did not *file* a bill of costs, but instead filed a motion for costs

13    and expenses under Federal Rule of Civil Procedure 54(d), and attached as an exhibit to the

14    declaration of attorney Mikhov in support thereof a bill of costs "for the purposes of assisting the

15    court's review of plaintiff's costs and expenses."  (Doc. Nos. 111-1 at 10, n.1; 111-2 at 2, Ex. A.)

16    Rule 54(d) provides that "costs—other than attorney's fees—should be allowed to the

17    prevailing party."  Fed. R. Civ. P. 54(d).  Moreover, 28 U.S.C § 1920 enumerates those costs that

18    may be taxed by the judge or the Clerk of the Court.  For example, "[f]ees of the clerk and

19    marshal" are taxable, but fees for expert witnesses that were not appointed by the court are not

20    listed as a taxable cost.  *See* 28 U.S.C § 1920; *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482

21    U.S. 437 (1987) (holding that "absent explicit statutory or contractual authorization for the

22    taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations

23    set out in 28 U.S.C. § 1821 and § 1920").  In contrast, any "claim for attorney's fees and *related*

24    *nontaxable expenses* must be made by motion . . .."  Fed. R. Civ. P. 54(d)(2)(A) (emphasis

25    added).

26    California law, however, permits plaintiffs who prevail in Song-Beverly Act cases to

27    recover costs and expenses, including expert witness fees.  *See* Cal. Civ. Code § 1794(d); *Jensen*

28    *v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112, 138 (1995), *as modified on denial of reh'g* (June

1    22, 1995) (noting that with regards to § 1794, "the addition of awards of 'costs and expenses' by

2    the court to the consumer to cover such out-of-pocket expenses as filing fees, expert witness fees,

3    marshal[]'s fees, etc., should open the litigation process to everyone").  Applying § 1794(d), the

4    court determines that expert witness fees and other costs that are nontaxable under federal

5    procedural rules are recoverable here.  *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1064–66

6    (9th Cir. 2003), *as amended on denial of reh'g* (Sept. 25, 2003) (applying Oregon statute

7    approving expert witness fees because the law was "an 'express indication' of a state legislature's

8    'special interest in providing litigants' with full compensation for reasonable sums" in pursuit of a

9    statutory claim).  However, § 1794(d) only answers the question of *whether* plaintiff may recoup

10   such costs and expenses—it does not answer the question of *how* plaintiff must seek

11   reimbursement.[7]

12        Because the recovery of "costs in federal district court is normally governed by Federal

13   Rule of Civil Procedure 54(d) even in diversity cases," *Champion Produce, Inc. v. Ruby Robinson*

14   *Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003), the appropriate vehicle for plaintiff to recoup

15   expert witness fees and other expenses is by motion brought pursuant to Rule 54(d)(2)(A), not by

16   taxation through a Bill of Costs.  The language of § 1794(d) is consistent with this approach:

17                 If the buyer prevails in an action under this section, the buyer shall
                   be allowed by the court to recover as part of the judgment a sum
18                 equal to the aggregate amount of costs and expenses, including
                   attorney's fees based on actual time expended, *determined by the*
19                 *court to have been reasonably incurred* by the buyer in connection
                   with the commencement and prosecution of such action.
20

21   Cal. Civ. Code § 1794(d) (emphasis added).  Whereas taxable costs are awarded as a matter of

22   course, and a court must justify its refusal to award such costs, *Champion Produce*, 342 F.3d at

23

24   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [7]  The court recognizes that district courts in this circuit are divided as to whether expert witness
25   fees and other costs and expenses are recoverable in federal court pursuant to § 1794(d), and if so,
     whether such costs and expenses are taxable in a Bill of Costs or must be sought via motion.
26   *Compare Base v. FCA US LLC*, No. 17-cv-01532-JCS, 2020 WL 363006, at *6–7 (N.D. Cal. Jan.
     22, 2020) (listing and comparing cases), *and Zomorodian v. BMW of N. Am., LLC*, 332 F.R.D.
27   303, 307 (C.D. Cal. 2019), *with Self v. FCA US LLC*, No. 1:17-cv-01107-SKO, 2019 WL
     1994459, at *15 (E.D. Cal. May 6, 2019), *and Hall v. FCA US LLC*, No. 1:16-cv-0684-JLT, 2018
28   WL 2298431, at *10 (E.D. Cal. May 21, 2018).

1   1022 (holding that a "district court must 'specify reasons' for its refusal to award costs" because

2   "Federal Rule of Civil Procedure 54(d)(1) establishes that costs are to be awarded as a matter of

3   course in the ordinary course") (citation omitted), the party claiming nontaxable costs like expert

4   witness fees must demonstrate to the court, *by motion*, that its request is reasonable.  *See* Fed. R.

5   Civ. P. 54(d)(2)(A); Cal. Civ. Code § 1794(d).  This logic is precisely why plaintiff was required

6   to and is seeking attorneys' fees, costs, and expenses by motion and not via a Bill of Costs.

7   FCA only objects to plaintiff's request for $7,453.75 as reimbursement for the expert

8   witness fees charged by plaintiff's expert Dr. Barbara Luna.  (Doc. No. 113.)  FCA does not

9   oppose any of the other costs and expenses for which plaintiff now seeks reimbursement,

10   including the expert witness fees charged by plaintiff's other expert.  (*Id.*)

11   First, FCA argues that plaintiff retained Dr. Luna to provide testimony in support of his

12   fraudulent concealment claim, for which fees are not recoverable.  (*Id.* at 3–4.)  In reply, plaintiff

13   contends that Dr. Luna's testimony would also have been relevant to his Song-Beverly Act claim,

14   particular as to the willfulness of FCA's conduct and whether civil penalties should be awarded.

15   (Doc. No. 115 at 2–3.)  FCA does not address the fact that Dr. Luna's testimony was relevant to

16   plaintiff's Song-Beverly Act claim.  Moreover, attorneys' fees and expenses do not need to be

17   apportioned where there is "an issue common to both a cause of action for which fees are

18   permitted and one for which they are not," and "all expenses incurred on common issues qualify

19   for an award."  *Akins v. Enter. Rent-A-Car Co. of S.F.*, 79 Cal. App. 4th 1127, 1133 (2000); *see*

20   *also Blasco Real Estate, Inc. v. FCA US LLC*, No. CIVDS1609641, 2019 WL 5965149, at *1

21   (Cal. Super. Ct. June 05, 2019) (declining to apportion attorneys' fees where "the claims of fraud

22   and warranty and civil penalties overlapped").  Thus, the court will not reduce recovery of Dr.

23   Luna's expert witness fees based on this argument.

24   Second, FCA points to the fact that it filed a motion in limine to exclude Dr. Luna's

25   testimony because, according to FCA, she lacked "the requisite mechanical expertise to render

26   reliable opinions" in this case.  FCA argues that as a result, it should not have to pay her expert

27   witness fees.  (*Id.* at 4.)  However, as plaintiff points out, FCA's motion in limine was never ruled

28   upon.  (Doc. No. 115 at 3.)  In addition, plaintiff argues that FCA's belief that Dr. Luna was not

1   qualified to testify at trial does not render her expert witness fees unreasonable.  (*Id.*)  The court

2   agrees and will not reduce recovery of Dr. Luna's expert witness fees based on this argument

3   either.

4          Third, FCA argues that Dr. Luna "personally performed relatively little work on this

5   case," and the amount Dr. Luna charged in this case is unreasonable because her work is

6   repetitive in nature.  (*Id.* at 4.)  Plaintiff counters that there is nothing unreasonable about Dr.

7   Luna utilizing her staff who bill at a lower rate to perform certain tasks, like document review and

8   clerical tasks.  (Doc. No. 115 at 3–4.)  According to plaintiff, Dr. Luna's utilization of her staff in

9   this manner is fiscally efficient and more reasonable than if she had performed all of the work

10  herself.  (*Id.* at 4.)  Having reviewed Dr. Luna's invoices in this matter (Doc. No. 111-2 at 45–

11  47), the court is persuaded by plaintiff's argument that Dr. Luna's utilization of her staff with

12  lower billing rates for certain tasks actually rendered her fees more reasonable than they would

13  have been had she performed all of the tasks herself.

14         Fourth, and relatedly, FCA contests the reasonability of Dr. Luna's fees because her work

15  is repetitive; "[h]er office prepares the same lengthy exhibits and schedules" in each of the cases

16  that she provides her expert services.  (Doc. No. 113 at 4.)  But notably, FCA does not argue that

17  the work reflected on Dr. Luna's invoices was not performed in this case—i.e., that the fees were

18  not actually incurred.  Moreover, plaintiff explains in his reply that although his counsel

19  frequently retains Dr. Luna as an expert in their other lemon law cases, "Dr. Luna prepares expert

20  reports and prepares for her depositions on a case by case basis."  (Doc. No. 115 at 4.)  Having

21  reviewed Dr. Luna's invoices and the tasks reflected therein, the court concludes that Dr. Luna's

22  expert witness fees for those tasks—regardless of whether those tasks are repetitive in nature with

23  the work that her office performed in other cases—were actually and reasonably incurred in

24  connection with the prosecution of this action.  Accordingly, the court will award plaintiff

25  reimbursement for all of Dr. Luna's expert witness fees.

26         The court has also reviewed plaintiff's itemized bill of costs and the attached receipts and

27  documentation in support of the other costs and expenses for which plaintiff seeks

28  reimbursement.  (*See* Doc. No. 111-2 at 4–65.)  The court declines to award the $9.10 for

"copies" because plaintiff's counsel has not provided any explanation or documentation to substantiate that amount.  (*Id.* at 7.)  The court also declines to award $73.92 for "Westlaw legal research" because plaintiff has similarly not provided any documentation to substantiate those charges.  (*Id.*)  In addition, a close review of plaintiff's counsel's billing entries on the dates that those research charges were incurred indicates that no attorney performed research on those dates. Finally, the court declines to award the $0.80 for the unexplained and unsubstantiated Pacer charge incurred in May 2019.  (*Id.* at 8.)  The court has reviewed the records for the remaining costs and expenses sought by plaintiff and finds them to be reasonably incurred.

Accordingly, after applying the reductions noted above, the court will award costs and expenses as follows:

| Cost and Expense | Amount Requested | Amount Awarded |
|---|---|---|
| Fees of the Clerk | $438.64 | $438.64 |
| Fees for Service of Summons and Subpoena | $430.95 | $430.95 |
| Deposition Costs | $2,505.78 | $2,505.78 |
| Expert Witness Fees | $10,743.11 | $10,743.11 |
| Messenger and Court Filing Services | $654.21 | $654.21 |
| Copies | $9.10 | $0.00 |
| Legal Research | $73.92 | $0.00 |
| Travel | $486.43 | $486.43 |
| Pacer Charges | $0.80 | $0.00 |
| Total: | $15,342.94 | **$15,259.12** |

The court concludes that plaintiff is entitled to a total of $15,259.12 in reimbursements for costs and expenses.

**CONCLUSION**

For the reasons explained above:

1.     Plaintiff's motion for attorneys' fees and costs (Doc. No. 110) is granted in part;

2.     The court declines to award $3,500.00 to LA Law as attorneys' fees for the legal services performed by plaintiff's probate counsel, Joseph McHugh;

/////

/////

/////

23

3.      The court awards $29,462.50 for Knight Law and $13,807.50 for Wirtz Law in attorneys' fees based on the lodestar analysis set forth above; and

4.      The court awards costs and expenses in the amount of $15,259.12.

IT IS SO ORDERED.

Dated:   **August 22, 2020**

                            UNITED STATES DISTRICT JUDGE

24